956 F.2d 270
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gene ALLEN, Defendant-Appellant.
 No. 87-5001.
 United States Court of Appeals, Sixth Circuit.
 Feb. 28, 1992.
 
 On Appeal from the United States District Court for the Eastern District of Kentucky, No. 86-15; Scott Reed, D.J.
 Maria G. Ransdell, Lexington, Ky. nunc pro tunc, for appellant.
 Louis DeFalaise, United States Attorney, James Arehart, Lexington, Ky., for appellee.
 E.D.Ky.
 AFFIRMED.
 Before KENNEDY and RALPH B. GUY, Jr., Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant-appellant Gene Allen appeals his jury conviction for conspiracy to travel in interstate commerce with intent to commit murder for hire, in violation of 18 U.S.C. § 371. Defendant asserts the District Court erred in denying his motion for acquittal on the conspiracy charge in that the government's evidence failed to establish an overt act in furtherance of the agreement. He also claims a violation of his constitutional right to effective assistance of counsel. We find no merit to the first argument, and decline to reach the second, and therefore AFFIRM the judgment of the District Court.
 
 I.
 
 2
 In 1984, the FBI began an investigation into official corruption in eastern Kentucky. In the investigation, Virginia State Police Officer Houston McNeal went undercover as "Harry McBride." Two of the primary suspects with whom McNeal dealt were defendant, then the Judge Executive of Morgan County, and Titus Frederick, a Morgan County businessman. The bulk of the investigation involved drug distribution and official payoffs for protection.
 
 
 3
 In the fall of 1985, McNeal, Frederick and the defendant came to discuss a man named Gerald Griggs, alleged to be a professional hit man. McNeal suggested to defendant and Frederick that he could use Griggs' services with respect to an associate in Virginia who allegedly had "ripped him off" for $90,000. McNeal testified that on December 4, 1985, he specifically requested defendant and Frederick to assist him in the matter, and that they talked about it extensively. McNeal testified that the defendant and Frederick told him that Griggs was the man for the job, and that he had already killed several people.
 
 
 4
 At trial the government presented evidence that several conversations took place between and among the defendant, Frederick, Griggs, and several other ancillary figures. For example, one individual testified that defendant told him on December 25, 1985 that "Griggs said he would do it, that job for [McNeal]." In early January, both McNeal and Griggs traveled to Okeechobee, Florida, allegedly to coordinate the details of the murder for hire, but they were unable to meet. McNeal was given a picture of Griggs by Frederick, and was also told that Griggs could do his job as soon as he finished a few other contracts.
 
 
 5
 On January 23, 1986, McNeal met Griggs, Frederick and the defendant in a hotel to work out more details of the deal. This meeting was videotaped and recorded by the FBI. At the meeting, Griggs reaffirmed that he was willing to do the job, requested pictures and detailed information about the intended victim, and received $5,000 from McNeal. The defendant acted as an intermediary in arranging and conducting the meeting, and left the meeting with Griggs.
 
 
 6
 Shortly thereafter, in early February of 1986, the defendant attempted to contact McNeal to inform him that the plans could proceed. In a recorded phone call later that month, defendant told McNeal that "that other boy is here ... [the] one that supposed to go to Virginia for ya. He's standin' by anytime you want ... He's just waiting on ya."
 
 
 7
 Defendant, Frederick and Griggs were all subsequently indicted for this and various other offenses. In the instant case, defendant was charged with violating 18 U.S.C. § 371, which prohibits knowingly and willfully conspiring to travel and cause another to travel in interstate commerce with intent that a murder for hire be committed. At trial, defendant claimed in his defense that, although he did commit the acts alleged, he did so as part of a reverse investigation and lacked the requisite intent. The jury found otherwise, however, and convicted him of the conspiracy charge.
 
 
 8
 Defendant appealed his conviction, claiming error in the denial of his motion for judgment of acquittal. Defendant contended that the government's evidence established an agreement only as of the January 23, 1986 meeting, and that no overt acts in furtherance of the conspiracy occurred subsequent to that date. Prosecution of that appeal suffered numerous procedural infirmities, but this Court now has proper jurisdiction over both the original insufficient evidence issue and a new ineffective assistance of trial counsel claim.
 
 II.
 
 9
 We find defendant's insufficient evidence argument wholly without merit. In reviewing a denial of a motion for judgment of acquittal, we consider the facts in the light most favorable to the government and assess whether there is evidence from which a rational jury might find guilt beyond a reasonable doubt. United States v. Gorman, 807 F.2d 1299, 1303 (6th Cir.1986), cert. denied, 484 U.S. 815 (1987). Because the defendant presented evidence on his own behalf, we consider the sufficiency of the evidence on the record taken as a whole. United States v. Maffei, 450 F.2d 928, 930 (6th Cir.1971), cert. denied, 406 U.S. 938 (1972).
 
 
 10
 Defendant was charged with conspiring with Griggs and Frederick. The existence of the conspiracy may be inferred from actions done with a common purpose. United States v. Hughes, 891 F.2d 597, 601 (6th Cir.1989). There certainly was evidence from which the jury could find a conspiracy as early as December, 1985. The various phone calls, conversations, and attempted meetings in Florida all can serve as the foundation for an inferential conclusion that the parties had agreed to carry out McNeal's fictitious "hit." There was thus evidence of an agreement between defendant, Frederick and Griggs by early January, 1986. McNeal's payment to Griggs of the $5,000 in the hotel in late January would then serve as the subsequent overt act in furtherance of the conspiracy.
 
 
 11
 Moreover, defendant concedes that the January 23, 1986 meeting in the hotel room presented conclusive evidence of an agreement. Defendant's phone call to McNeal in February 1986 informing him that Griggs was "ready to go" could therefore constitute a subsequent act in furtherance of the object of the conspiracy. It was not simply a mere reaffirmation of the agreement, as defendant contends, but rather was a conversation designed to expedite and move forward the ends sought by the conspiracy, the murder for hire. The motion for judgment of acquittal, therefore, was properly denied.
 
 
 12
 We do not reach defendant's ineffective assistance of trial counsel claim, for it was not raised in the District Court. It is well settled that such a claim should be raised first in the District Court. See, e.g., United States v. Sanchez, 928 F.2d 1450, 1458 (6th Cir.1991). Defendant's claim arises out of the quality and efficacy of the presentation of his reverse investigation defense strategy. We have nothing before us other than the bare record of the trial. Defendant relies on matters outside that record. This is not, therefore, one of the rare cases where the issue is presented with such clarity and completeness that an appellate court may appropriately consider the issue. Cf. United States v. Pickett, 941 F.2d 411 (6th Cir.1991).
 
 III.
 
 13
 For the foregoing reasons, we AFFIRM the judgment of the District Court.